IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLEO HARRIS, | ) | |
| | ) | Civil Action No. 2:25-cv-64 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHATHAM UNIVERSITY, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | Electronically Filed. |

COMPLAINT IN A CIVIL ACTION

COMES NOW, the Plaintiff, CLEO HARRIS, by and through her attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, MASSIMO A. TERZIGNI, ESQUIRE, and ELIZABETH A. TUTTLE, ESQUIRE, and hereby files this Complaint in a Civil Action as follows:

JURISDICTION AND VENUE

1. This action is brought against the Defendant for violating Plaintiff's right to be free from illegal, invidious and damaging discrimination in his employment based on her disabilities and/or perceived disabilities as guaranteed the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA").

2. Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3).

3. Venue is proper under 28 U.S.C. § 1391(b). All claims set forth herein arose in the Western District of Pennsylvania.

4. Pursuant to the violations described herein in Count I, this Court is also empowered to exercise pendant jurisdiction over the claims set forth in Count II pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951.

5.  Plaintiff has satisfied all procedural and administrative requirements, and in particular:

   a.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on or about May 2, 2024, and said charge was cross filed with the Pennsylvania Human Relations Commission ("PHRC").

   b.  The EEOC issued a Notice of Dismissal and Right to Sue dated December 16, 2024;

   c.  Plaintiff's Complaint is timely filed within 90 days of Plaintiff's receipt of the Notice of Dismissal and Right to Sue.

## PARTIES

6.  Plaintiff, Cleo Harris, is an adult female residing in Allegheny County, Pennsylvania.

7.  Defendant, Chatham University, is a private university with a registered address of 107 Woodland Road, Pittsburgh, Pennsylvania 15232.

8.  At all times relevant hereto, Defendant was acting through its agents, subsidiaries, officers, employees and assigns acting within the full scope of their agency, office, employment or assignment.

## FACTUAL ALLEGATIONS

9.  Plaintiff is diagnosed with bipolar disorder, an anxiety disorder and depression.

10. These conditions are mental disabilities that substantially limit one (1) or more of Plaintiff's major life activities, including, but not limited to, brain function, sleep and gastrointestinal function.

11. Plaintiff was employed by the Defendant from on or about January 31, 2024, until her unlawful termination, on or about February 11, 2024.  At the time of the Plaintiff's unlawful termination, she held the position of Human Resources Coordinator.

12. Plaintiff was hired by the Defendant in January, 2024.

13. Approximately one (1) week prior to her start date with Defendant, Plaintiff received

mental health treatment and medication for her mental health diagnoses: bipolar disorder, anxiety and depression.

14. At that time, the outside recruiter that arranged Plaintiff's initial interview with Defendant, Lynn Athey ("Athey"), and Defendant's Director of Human Resources, Kristen Bell ("Bell"), were unable to reach Plaintiff due to Plaintiff's aforementioned mental health treatment.

15. Thereafter, Plaintiff contacted Ms. Athey and disclosed that she was receiving treatment for her mental health diagnoses.

16. Ms. Athey stated that she would not disclose Plaintiff's mental health information to Ms. Bell, at that time.

17. On January 31, 2024, Plaintiff began her employment with Defendant.

18. At that time, Plaintiff began her training with Ms. Bell, who was Plaintiff's direct supervisor, and Defendant's Associate Director of Human Resources, Maria Franek ("Franek").

19. Throughout the first week of Plaintiff's employment, she received positive feedback from Ms. Bell and Ms. Franek.

20. Ms. Bell and Ms. Franek were aware of Plaintiff's skill level and that Plaintiff required training on benefits, but assured Plaintiff that they would provide her with the necessary training and guidance and that it was not an issue.

21. On or about February 1, 2024, Plaintiff disclosed to Ms. Franek that she experienced anxiety.

22. Shortly after the Plaintiff's start date, Ms. Franek reviewed benefits with Plaintiff. At that time, Plaintiff asked Ms. Franek a question about Express Scripts.

23. Ms. Franek responded that she did not know the answer to Plaintiff's question, but would be interested to know the answer in order to tell new hires in the future. However, Plaintiff was

not given a directive to call about Express Scripts and was not given any deadline to get the information about Express Scripts, at that time.

24. Plaintiff received positive feedback from Ms. Bell, Ms. Franek and Ms. Athey, at the end of her first week.

25. On or about February 6, 2024, while having lunch with Ms. Bell in the dining hall, Plaintiff disclosed her bipolar diagnosis, anxiety and depression to Ms. Bell.

26. Plaintiff informed Ms. Bell that she was taking medication for her mental health diagnoses and assured Ms. Bell that her symptoms were well managed with her medications.

27. At that time, Ms. Bell became visibly upset and expressed disdain for another individual that she claimed was bipolar, violent and erratic. Ms. Bell claimed that the aforementioned individual "tried to kill her."

28. Plaintiff believes, and therefore avers, that since Plaintiff's disclosure of her bipolar diagnosis to Ms. Bell, Plaintiff was discriminated against by Defendant, was treated less favorably by Defendant than individuals without mental health diagnoses and/or was subjected to harassment and/or increased job scrutiny based on her disabilities: bipolar disorder, anxiety and/or depression.

29. Later that same day, Plaintiff received a text message from Ms. Athey asking what was happening at work and informing Plaintiff that Ms. Bell was upset with Plaintiff.

30. Ms. Athey informed Plaintiff that Ms. Bell stated that she was concerned that she made the wrong decision in hiring Plaintiff. Ms. Bell also alleged that Plaintiff was tardy on three (3) occasions.

31. However, Plaintiff was only tardy (1) day, during her first week, due to traffic from a car accident on her route to work.

32. Additionally, Ms. Franek scheduled an office training at 8:30 a.m. for Monday, February 5, 2024, before the Plaintiff was scheduled to start her shift. Ms. Franek later apologized to the Plaintiff and stated that she did not remember that the Plaintiff did not start her shift until 9:00 a.m.

33. Plaintiff responded that she would make every effort to arrive early, however, because she had children, she might not be able to arrive until her start time at 9:00 a.m.

34. Ms. Franek assured the Plaintiff that it was not a problem if the Plaintiff could not arrive at 8:30 a.m.

35. Plaintiff arrived at 8:57 a.m. for her 9 a.m. shift on February 5, 2024.

36. Plaintiff is unaware of a third instance in which she would have been perceived by the Defendant as tardy.

37. Plaintiff believes, and therefore avers, that Ms. Bell's statements to Ms. Athey were made based on her disabilities: bipolar disorder; anxiety; and depression, as described at Paragraph 30.

38. Notably, prior to the aforementioned disclosure of her diagnosis to Ms. Bell, as described above, Plaintiff was given positive feedback from Ms. Bell and Ms. Franek, even after she arrived late to work during her first week.

39. The following day, on or about February 7, 2024, Plaintiff met with Ms. Bell and Ms. Franek. At that time, Ms. Franek asked for an update on the Plaintiff's assignments.

40. Plaintiff responded that all of her assignments were completed, but that she did not have the opportunity to call about the Plaintiff's question regarding Express Scripts.

41. Ms. Bell then alleged that Plaintiff's question regarding Express Scripts was an "assignment" and that it was due at the end of the previous week. Ms. Bell instructed the Plaintiff to complete the task immediately.

42. However, as stated hereinbefore above, Plaintiff was never assigned to complete that task and was not given any deadline.

43. Plaintiff believes, and therefore avers, that Ms. Bell falsely alleged that Plaintiff failed to do the "assignment" and that the "assignment" was due by the end of the week prior as part of the harassment and/or increased scrutiny of her performance, based on the Plaintiff's diagnoses, disabilities and/or perceived disabilities.

44. That same day, Plaintiff was also verbally reprimanded by Ms. Bell for hanging a painting on her wall during Plaintiff's lunch hour. Notably, Ms. Bell had previously encouraged Plaintiff to decorate her office.

45. Sometime thereafter, Plaintiff asked the facility supervisor if she was permitted to submit a facility request to hang the paintings. The facility supervisor responded that the Plaintiff was permitted to submit a request and that it was not an issue.

46. Thereafter, Plaintiff continued to suffer from increased scrutiny of her job performance.

47. By way of example, Ms. Franek stated to the Plaintiff that she was shocked that the Plaintiff had asked the same question twice during a meeting, when the Plaintiff was simply asking for clarification; alleged that the Plaintiff seemed distracted; suggested that the Plaintiff see a therapist; and asked the Plaintiff if she even wanted to work in Human Resources anymore.

48. Ms. Franek also told the Plaintiff that she believed that all of the Plaintiff's anxiety was clouding her judgment. That statement was, and is, false.

49. On Friday, February 9, 2024, at or about 2:00 p.m., Plaintiff was assigned a task to study all of the medical, dental and vision plans and to present the subject, in her own terms, on Monday afternoon, February 12, 2024. There were approximately thirty-three (33) pages of information including information on qualified high deductible plans and PPOs.

50. Ms. Franek assured the Plaintiff that the assignment was meant to gauge her knowledge and to assess where she required training.

51. Plaintiff spent the weekend preparing, which required her to go into the office to retrieve materials on Saturday, February 10, 2024.  Plaintiff's two (2) minor daughters and the Plaintiff were in her office for approximately ten (10) minutes.

52. Prior to that time, Ms. Bell told Plaintiff that her daughters could come by for a tour of the campus at "any time."

53. On Monday, February 12, 2024, Ms. Franek accused the Plaintiff's daughters of being in her office due to the position of one of her fans.

54. Plaintiff assured Ms. Franek that her daughters were only in the Plaintiff's office and that they were only there for approximately ten (10) minutes.

55. Thereafter, at or about 10:30 a.m., Ms. Bell informed the Plaintiff that she was not available for the Plaintiff's presentation that was scheduled for that afternoon, and, as a result, the Plaintiff would instead have to present to Ms. Bell, at that time.  This gave the Plaintiff less time to prepare for the presentation than what she had previously anticipated.

56. Plaintiff then gave her presentation to Ms. Bell and Ms. Franek, hours before she was scheduled to do so.

57. Plaintiff was subjected to excessive scrutiny of her performance of that presentation from Ms. Bell, and Ms. Bell left before the presentation was complete.

58. When the Plaintiff asked for feedback on her presentation, Ms. Bell responded by laughing and telling Ms. Franek to "deal with this."

59. Ms. Franek provided constructive criticism and positive feedback of the Plaintiff's presentation.

60. That same day, at or about 2:30 p.m., Plaintiff was called to a meeting with Ms. Bell and Ms. Franek. At that time, Plaintiff was informed that she was terminated from her position.

61. The alleged reasons provided by Ms. Bell for Plaintiff's termination were that Plaintiff was allegedly tardy "multiple times"; that Plaintiff put in a request for the facility worker to hang paintings in her office; that Plaintiff took her lunches in the dining hall; that the Plaintiff's lunches were allegedly too long; that Plaintiff brought her daughters to the office; and that the Plaintiff was allegedly not at the skill level that was required by Defendant.

62. For the reasons stated herein, Plaintiff believes, and therefore avers, that Defendant's stated reasons for her termination are pretextual and unworthy of belief.

63. As stated hereinbefore above, Plaintiff was tardy one (1) day due to traffic from an accident on her route to work.

64. Plaintiff was told by the facility supervisor that she was permitted to make facility requests to hang paintings. Furthermore, Ms. Bell has made facility requests for work in her office.

65. Plaintiff was never told by Defendant that she was not permitted to have lunch in the dining hall. In fact, several times, Ms. Bell and/or Ms. Franek invited the Plaintiff to have lunch with them in the dining hall, without issue.

66. The aforementioned lunch breaks with Ms. Bell and/or Ms. Franek were approximately the same amount of time and/or significantly longer than the Plaintiff's lunch breaks.

67. Plaintiff's lunch breaks were approximately thirty (30) minutes. Furthermore, it was never communicated how long the Plaintiff's lunch breaks should be.

68. Finally, Ms. Bell and Ms. Franek were aware of the Plaintiff's skill level at the time that she was hired, as stated hereinbefore above.

69. Additionally, another employee informed Plaintiff that Ms. Bell stated to that employee that Ms. Bell was going to terminate Plaintiff because Plaintiff had "behavioral issues" that that employee was not aware of.

70. That statement was, and is, materially false. Plaintiff did not display any behavioral issues throughout her employment with Defendant.

71. Plaintiff believes, and therefore avers, that the statements by Ms. Bell were based on her disabilities and/or perceived disabilities: my diagnoses of bipolar disorder, anxiety and depression.

72. As described herein, the reasons provided by Defendant for her termination are pretextual and unworthy of belief.

73. Plaintiff believes that Defendant subjected her to excessive job scrutiny and harassment and terminated the Plaintiff based on her disabilities and/or perceived disabilities: her diagnoses of bipolar disorder, anxiety and depression.

74. As a result of Defendant's illegal conduct, Plaintiff has been adversely affected financially and professionally; and has suffered extreme emotional and physical distress, as described herein.

75. Plaintiff believes, and therefore avers, that Defendant's conduct is part of a plan, pattern or practice of discrimination that may affect individuals similarly situated to her.

## COUNT I:

## AMERICANS WITH DISABILITIES ACT

76. Plaintiff incorporates by reference Paragraphs 1 through 75 as though fully set forth at length herein.

77. This is a proceeding under the ADA for declaratory judgment as to the Plaintiff's rights, and for a permanent injunction restraining Defendant from maintaining a policy, practice, custom or usage of discrimination against Plaintiff because of a disability and/or a perceived disability with respect to her ability to perform the necessary functions of her employment, and further, with respect to the terms, conditions and privileges of that employment, in such ways and by such means so as to deprive, as Defendant has deprived Plaintiff, of equal employment status because of a disability or a perceived disability.  This Count also seeks restoration to Plaintiff of all rights, privileges, benefits and income that she would have received but for Defendant's unlawful and discriminatory practices, and a make whole remedy to compensate her for her injuries, losses and damages together with such exemplary, punitive, compensatory and liquidated damages as are provided by law.

78. Plaintiff believes, and therefore avers, that she was maliciously, willfully and intentionally discriminated against, and/or treated with reckless indifference to her rights under the law, in the terms and conditions of her employment because of a disability and/or a perceived disability in that she was discriminated against when Defendant terminated Plaintiff shortly after being informed of Plaintiff's disability.

79. As a result of Defendant's discriminatory actions, Plaintiff has been substantially and illegally harmed, and suffered large and continuing financial losses, deprivation of employment, benefits, prerequisites, and fair treatment, and has suffered continuing emotional and physical distress and injury, embarrassment and humiliation caused by Defendant, its managers, supervisors, employees, agents, attorneys and other officials.

80.     The actions of Defendant in denying Plaintiff an equal opportunity to continue and advance in her employment with Defendant without discrimination constitutes a violation of the ADA.

81.     Plaintiff has no other plain, adequate or complete remedy at law to redress the wrongs done to her by Defendant and this suit for injunctive and other relief is her only means of securing just and adequate redress and relief.  Moreover, Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's disability discrimination policies, practices, customs and usages as set forth herein until and unless the same are enjoined by the Court.

WHEREFORE, Plaintiff requests the following:

a.  that the Court enter a judgment declaring Defendant's actions to be unlawful and violative of the ADA;

b.  that the Court award the Plaintiff back pay damages and other benefits lost due to Defendant's unlawful conduct plus interest from the date of discrimination;

c.  that the Court award damages to the Plaintiff to compensate her for damages resulting from her pain, suffering and inconvenience, as well as such other compensatory damages as permitted by law;

d.  that the Court award Plaintiff punitive damages as a result of the Defendant's willful violation of the ADA;

e.  that the Court order Defendant to award the Plaintiff the position she held before she was discriminated against and/or the position most appropriate for Plaintiff under the circumstances, with the accumulated seniority, fringe benefits, and all other rights, or in the alternative, that the Court order Defendant to pay the Plaintiff front pay equivalent to her lost salary, salary raises, fringe benefits and all other rights to which she would have been entitled but for Defendant's discriminatory conduct;

f.  that the Court award the Plaintiff pre-judgment and post-judgment interest from the date of the discrimination;

    g.    that the Court award the Plaintiff reasonable attorneys' fees and costs of this action; and

    h.    that the Court grant the Plaintiff such additional relief as may be just and proper.

JURY TRIAL DEMANDED

COUNT II:

PENNSYLVANIA HUMAN RELATIONS ACT

82. Plaintiff incorporates by reference Paragraphs 1 through 81 as though fully set forth at length herein.

83. Defendant's actions in subjecting Plaintiff to discrimination based on her disability, maliciously and with reckless indifference to Plaintiff's right to be free from such discrimination and retaliation in violation of the PHRA.

84. As a direct result of the Defendant's discriminatory actions in violation of the PHRA, the Plaintiff has lost wages and other economic benefits of her employment with Defendant. In addition, the Plaintiff has incurred counsel fees and other costs in pursuing her legal rights. Plaintiff has also suffered from emotional distress, inconvenience, humiliation, loss of standing among her peers and stress.

85. The actions on the part of Defendant were intentional and willful and were done with a reckless disregard for Plaintiff's rights.

    WHEREFORE, Plaintiff requests the following:

    a.    that the Court enter a Judgment declaring Defendants' actions to be unlawful and violative of the PHRA;

    b.    that the Court award the Plaintiff liquidated damages in an amount equal to the pecuniary losses sustained as a result of Defendants' willful violation of PHRA;

    c.    that the Court award Plaintiff compensatory damages as a result of Defendants' actions being unlawful and violative of the PHRA;

    d.    that the Court award Plaintiff pre-judgment and post-judgment interest from the date of the discrimination;

    e.    that the Court award Plaintiff reasonable attorneys' fees and costs of this action; and

    f.    that the Court grant the Plaintiff such additional relief as may be just and proper.

                                                  JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
*Counsel for Plaintiff*

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: January 14, 2025